IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOEL FAUST, et al.              *
                               *
            v.                 *   Civil Action WMN-10-2336
                               *
COMCAST CABLE COMMUNICATIONS   *
MANAGEMENT, LLC.               *
                               *

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM

Pending before the Court is Plaintiffs' Motion for

Conditional Certification and to Facilitate Notice under the

Fair Labor Standards Act, ECF No. 23.  Defendant has also filed

a Request for a Hearing, ECF No. 34, which Plaintiffs have

opposed.  The motion is fully briefed and ripe for review.[1]  Upon

consideration of the pleadings, facts and applicable law, the

---

[1] Defendant has also filed a Motion for Leave to File a Sur-
Reply, ECF No. 35, seeking permission of the court to file
additional briefing with regard to the relevance of the Supreme
Court's decision in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct.
2541 (2011).  Specifically, Defendant contends that the Dukes
case compels the Court to apply a higher standard when
determining whether the Plaintiff has established sufficient
commonality to warrant certification of the proposed class.  As
the Dukes case pertains to class certifications under Federal
Rule of Procedure 23 and was premised on alleged sexual
discrimination pursuant to Title VII of the Civil Rights Act of
1964, and the present case pertains to certification of a
collective action for unpaid overtime wages under the Federal
Labor and Standards Act, the Court finds Dukes to be
inapplicable and will therefore deny the Motion for Leave to
File a Sur-Reply.  See, e.g., Nehmelman v. Penn Nat'l Gaming,
Inc., No. 11-C-23, 2011 WL 4538698, at *9 (N.D. Ill. Sept. 29,
2011); Alli v. Boston Mkt. Co., No. 3:10-CV-4, 2011 WL 4006691,
at FN 3 (D. Conn. Sept. 8, 2011).

Court determines that no hearing is necessary, Local Rule 105.6, and Plaintiff's Motion for Conditional Certification and to Facilitate Notice will be granted in part.

## I. BACKGROUND

The present motion pertains to Plaintiffs' claims brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. (FLSA).  Plaintiffs allege that Defendant Comcast Cable Communications Management, LLC (Comcast) has failed to pay wages to them and other similarly situated employees and former employees, for work performed "off the clock" from August 2007 to the present.  Plaintiffs Faust and Feldman worked as hourly, non-exempt Customer Account Executives (CAEs) for Comcast in one of its Maryland call centers.[2]  During the relevant time period, Comcast operated eight different call centers in Maryland and employed approximately 3,000 CAEs.  Comcast currently operates six call centers and employs approximately 1,200 CAEs.

---

[2] Plaintiff Faust worked full-time as a CAE at a Comcast call center located at 8110 Corporate Drive in White Marsh, Maryland from December 2002 to June 2010.

Plaintiff Feldman worked as a CAE at the same call center from November 1997 to April 2010.  During the last 3 to 4 years of his employment Feldman went to part time status.

Opt-in plaintiff Brandon Alfred worked full-time as a CAE at the same call center from November 2004 to June 2010.  From November 2006 to April 2010 he worked as a CAE in the Customer Advocacy Group.

The title "Customer Account Executive" generally describes
employees who share the common duty of providing service and
support over the phone to current or prospective Comcast
customers.  In addition to handling customer calls, CAEs are
also required to review company emails in order to stay abreast
of new products, services, marketing campaigns and other
updates.

Plaintiffs allege that Comcast failed to pay them and other
similarly situated CAEs for all work performed, including work
performed causing them to accrue more than 40 hours worked in a
week.  Plaintiffs specifically allege that because they were
required to be ready to accept calls at their scheduled start
time, they had to arrive prior to that time in order to boot
their computers, open necessary software applications, and
review important company emails prior to taking calls.
Plaintiffs contend that completing these additional work-related
tasks caused them to work in excess of 40 hours a week, which
entitled them to receive overtime pay.  They allege that
Comcast, however, only paid them for scheduled time worked and
failed to pay them overtime wages in violation of federal law.

In the instant motion, Plaintiffs request that the Court
grant conditional certification for a collective action under
the FLSA and facilitate providing notice of the pendency of this

suit to similarly situated Comcast employees.  Plaintiffs'

proposed definition for the FLSA collective class is:

> All persons who have been employed in Maryland by Defendant
> as hourly employees in customer service, sales, and other
> similar positions, that require logging into and out of the
> telephone system since August 22, 2007, to the conclusion
> of this action, and who have not been paid overtime wages
> for all hours worked in excess of forty (40) hours per week

Compl. at 5.

## II. DISCUSSION

### A. Conditional Certification

Plaintiff seeks conditional certification pursuant to

Section 216(b) of the FLSA, found in Title 29 of the United

States Code.  Section 216(b) prescribes that "an action . . .

may be maintained against any employer . . . in any Federal or

State court of competent jurisdiction by any one or more

employees for and in behalf of himself or themselves and other

employees similarly situated."  This section establishes an

"opt-in" scheme that allows similarly situated potential

plaintiffs to become a party to a pending FLSA case by

affirmatively notifying the court of their intention to join the

collective action.

Whether to allow an FLSA claim to proceed as a collective

action is a discretionary decision.  Camper v. Home Quality

Mgmt. Inc., 200 F.R.D. 516, 519 (D. Md 2000) (citing Hoffmann-La

Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989)).  Allowing a

collective action to proceed "affords plaintiffs 'the advantage of lower individual costs to vindicate rights by the pooling of resources.'  Furthermore, 'the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact.'"  Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 496 (D.N.J. 2000) (quoting Hoffman-La Roche Inc., 493 U.S. at 170) (internal citation omitted).

When determining whether to grant a conditional certification for a collective action, courts generally follow a two-stage process.  As this Court recently explained,

> In the first stage, sometimes referred to as the "notice stage," the court makes a threshold determination of "whether the plaintiffs have demonstrated that potential class members are 'similarly situated,'" such that court-facilitated notice to the putative class members would be appropriate. Camper v. Home Quality Mgmt., Inc., 200 F.R.D. 516, 519 (D. Md. 2000). In the second stage, following the conclusion of discovery, "the court engages in a more stringent inquiry to determine whether the plaintiff class is [in fact] 'similarly situated' in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action." Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D. Md. 2007). This second stage, which typically begins when the defendant files a motion for decertification, is sometimes referred to as the "decertification stage." See id.

Syrja v. Westat, Inc., 756 F. Supp. 2d 682, 686 (D. Md. 2010).

Significantly, this initial inquiry is limited to whether class members are "similarly situated", and does not require the Court to make a decision on the merits of Plaintiff's allegations, nor to weigh the credibility of the evidence presented thus far.

At the first stage, a plaintiff "need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."[3]  Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234 (N.D.N.Y. 2002).  Despite this low standard, plaintiffs cannot merely stand on the allegations of their complaint but must make an adequate factual showing. Marroquin v. Canales, 236 F.R.D. 257, 259 (D. Md. 2006).  This burden is "not onerous, but it is also not invisible," Purdham v. Fairfax Cty. Pub. Schools, 629 F.Supp. 2d 544, 548 (E.D. Va. 2009) (citation omitted), and "Plaintiffs must submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exist." Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266 (D. Minn. 1991).

Plaintiffs have sought to make their modest factual showing by submitting a number of documents, including declarations made under penalty of perjury by Plaintiffs Joel Faust, Marshall Feldman, and opt-in plaintiff Brandon Alfred; copies of Faust

---

[3] Defendant argues that because some discovery has already taken place the Court should undertake a more rigorous analysis of the record and require that Plaintiffs meet a higher evidentiary burden to demonstrate that other employees are similarly situated to Plaintiffs, essentially collapsing the two stages of the certification analysis into one.  Opp'n at 20.  The Court disagrees because extensive discovery has not taken place; as of the time of the briefing of this motion the parties had only engaged in written discovery that was limited in scope to the named Plaintiffs Faust and Feldman.

and Feldman's Comcast time records; emails sent by Comcast supervisors regarding time keeping; and documents outlining some of Comcast's official time keeping policies.

Plaintiffs' declarations aver that they worked as CAEs in a Comcast call center located in White Marsh, Maryland and that they were required to arrive early to login to their computers and start up certain software programs in order to be immediately available to take customer calls when their shifts began.  Faust Decl. ¶ 1, 5; Feldman Decl. ¶ 1, 5; Alfred Decl. ¶ 1, 5.  Plaintiffs state that they were not compensated for the time worked prior to the start of their shifts.  Faust Decl. ¶ 7; Feldman Decl. ¶ 7; Alfred Decl. ¶ 7.  They further aver that though the time keeping systems made it possible to record time worked in excess of a scheduled shift, doing so would negatively impact a CAE's ability to meet performance goals.  Faust Decl. ¶ 10 – 13; Feldman Decl. ¶ 10 – 13; Alfred Decl. ¶ 10 – 13. Finally, Plaintiffs declare that other CAEs were subject to this same scheme and were encouraged to work "off the clock" without receiving additional compensation.  Faust Decl. ¶ 16 – 17; Feldman Decl. ¶ 16 - 17; Alfred Decl. ¶ 16 - 17.

Plaintiffs' time records support these declarations as they indicate that for the vast majority of the days worked by Faust and Feldman the start and end times are all round numbers. These round numbers exactly correspond to the scheduled shift

times but seemingly fail to account for the pre-shift work that Plaintiffs aver took place.  Pls.' Exs. O and P.

Plaintiffs also submitted copies of several emails.  The first email, chronologically, was sent on April 10, 2010, by manager Brian Becker[4] to all supervisors overseeing CAEs in the IP Support group.  This email directed the supervisors to "not reject time entered for the few minutes a CAE may need to load their Cisco phones at the beginning of their shift."  Pls.' Ex. 22.  Becker's email also included a link to a "Time Entry & Payroll Q&A Document" and excerpts from that document, including a question and answer sequence that indicates CAEs should indeed record time worked for job duties, such as reading job-related memos or notices, performed before or after a shift.  Id. at 2. Plaintiff also included two additional emails sent several months later, in August 2010, by supervisor Jonathan Anderson to two different CAEs at the White Marsh call center.[5]  Both emails note that the CAE's adherence rating was below 93%, meaning that the CAE was not meeting performance goals with regard to

---

[4] Brian Becker is the Manger of Customer Technical Support at the call center located at 8110 Corporate Drive in White Marsh, MD. Becker Decl. ¶ 1.

[5] One email was sent to CAE Ondrea McClain, Pls.' Ex. 11, and the other to CAE Donte Stanley, Pls.' Ex. 12.  Manager Brian Becker was sent copies of both emails.

availability to take customer calls during their shift.[6]  Pls.'
Exs. 11 and 12.  The supervisor suggests that to improve this
rating the CAE should be available and signed in to the phones
starting at the scheduled shift time and to come to work a few
minutes earlier, if necessary, to accomplish this.[7]  Id.  The
emails do not mention whether or not the CAE would be
compensated for the pre-shift time used to load his or her
computer and necessary software applications.

The Court finds that the documents submitted by Plaintiffs
satisfy their modest burden, but only as to those employees
working at the call center located at 8110 Corporate Drive in

---

[6] A CAE's performance is measured by a variety of "metrics"
established by Comcast.  For many CAEs, the most important
metric is "Schedule Adherence," which effectively measures the
CAE's productivity by determining what percentage of the CAE's
scheduled time he or she is available to take customer calls.
An "Exceptional" score is achieved by having 98% adherence,
"Highly Effective" requires at least 96% adherence and
"Achieves" requires 93% adherence.  In order to meet performance
goals a CAE must have at least 93% adherence, meaning that out
of an eight hour work day the CAE may only be "unavailable" to
take calls for a maximum of 33.6 minutes.  This unavailable time
includes any paid breaks that CAEs are permitted to take during
their shift.  CAEs that work an eight hour shift are also
typically scheduled to take between 30 minutes and one hour for
an unpaid lunch break, but this scheduled break does not impact
the adherence rating.

[7] According to CAE Declarations provided by Defendant, the
computer-booting and application-loading process takes anywhere
from two to eight minutes to complete.  Budd Decl. ¶ 2; Twyman
Decl. ¶ 3; Brooks Decl. ¶ 5.

White Marsh, Maryland ("8110 Call Center"),[8] whose primary duty

is to perform telephone customer service.[9]  Plaintiffs have

successfully demonstrated that they are similarly situated to

other CAEs in their call center in so far as they are all

subject to standardized employment policies, a common

compensation scheme, and the same timekeeping mechanisms. The

primary duty for all of these CAEs is to be available to provide

customer service on the phones during their scheduled shift.  To

be prepared to do this, all CAEs must have their computers

booted, must be logged in, and must load necessary software.

The means and order by which this happens may vary by employee,[10]

but this variation is not enough to undermine the

appropriateness of granting conditional certification.

     Furthermore, Plaintiffs have averred that "based on . . .

observations and conversations with [] CAE co-workers, all of

the other CAEs. . . were subject to the same practices [as

Plaintiffs.]"  Feldman Decl. ¶ 17; Faust Decl. ¶ 17; Alfred

---

[8] The Court notes that there are 3 call centers located in White
Marsh, Maryland: 8110 Corporate Drive, 8029 Corporate Drive, and
8031 Corporate Drive.  Callahan Decl. ¶ 2.

[9] Plaintiffs acknowledge that "any CAE who did not perform
telephone customer service would not be similarly situated."
Reply at FN 6.

[10] For example, some employees do not completely shut down their
computers at the end of their shifts so they will only need to
log back on to be ready to accept calls, while other will need
to boot the computer and load necessary programs.  See, e.g.,
Trice Decl. ¶ 5; Hayes Decl. ¶ 7; Wallace Decl. ¶ 5.

Decl. ¶ 17.  There is no reason to suspect that Feldman, Faust and Alfred were singled out and that other employees at this facility were receiving adequate compensation for work they were required to complete prior to their scheduled shifts.  Moreover, the emails sent to two other CAEs in this call center illustrate that there were indeed others who were encouraged to complete work prior to the start of their scheduled shifts and who, like Plaintiffs, may not have been compensated for that time.  This is sufficient evidence to demonstrate a potentially failed implementation of Comcast's policy prohibiting off the clock work at the 8110 Call Center in violation of FLSA, and as such Plaintiffs' modest burden is satisfied.

Notwithstanding, Plaintiffs argue that the class should not be limited to the 8110 Call Center, but should include CAEs from all eight Maryland call centers.  This is because, they argue, all CAEs perform the same basic duties and are subject to the same company-wide policies, regardless of their physical call center location.  While the Court acknowledges this may be true, Plaintiffs have failed to provide any concrete evidence demonstrating that CAEs in other call centers are similarly situated in so far as they too have been victims of a failed implementation of Comcast's policy prohibiting off the clock work.

This Court similarly limited the scope of an opt-in class in Camper v. Home Quality Management, Inc., 200 F.R.D. 516 (D. Md. 2000).  In Camper, Plaintiffs requested that the court facilitate notice to similarly situated employees working in all 47 nursing home facilities managed by the Defendant.  Id. at 517.  While the Court recognized that the Defendant had a company-wide policy that potentially violated the FLSA, it limited the notice class to only those employees working at a single facility because Plaintiffs only provided deposition testimony and declarations attesting to company knowledge of these violations from employees at that single facility.  Id.; See also Hens v. ClientLogic Operating Corp, No. 05-CV-381S, 2006 WL 2795620, at *5 (W.D.N.Y. Sept. 26, 2006) (despite company-wide policy to pay overtime, the Court limited the certified class to employees from only 8 of Defendant's 52 call centers because these are the only call centers for which Plaintiffs made some showing, in the form of declarations from employees working at these locations, that potential FLSA violations occurred); Shabazz v. Asurion Ins. Serv., No. 3:07-0653, 2008 WL 1730318, at *5 (M.D. Tenn. Apr. 10, 2008) (refusing to grant certification for Houston call center employees when evidence only speaks to violations at Nashville locations).  As in Camper, this Court refuses to enlarge the

12

opt-in class absent some evidentiary showing of alleged

violations at other Maryland call centers.[11]

Defendant raises numerous arguments against granting

conditional certification for any class.  It argues, <u>inter alia</u>,

that Plaintiffs have not established an unlawful common policy,

Plaintiffs are not similarly situated to other CAEs, and that

Plaintiffs' claims are inappropriate for collective action

because they will require individualized inquiries.[12]  The Court

has satisfied the majority of these concerns by limiting the

opt-in class to only those former and current employees working

at the 8110 Call Center.

---

[11] Plaintiff also argues that the fact that a district court in
Illinois granted statewide Rule 23 class certification to
Comcast employees for the same allegations as are made in the
present case indicates that the practice of denying overtime pay
was a common policy perpetrated company wide and not isolated to
specific call centers.  <u>See</u> <u>Kernats v. Comcast Corporation</u>, No.
09-C-3368, 2010 WL 4193219 (N.D. Ill. Oct. 20, 2010).  This
Court notes two problems with this argument.  One, the <u>Kernats</u>
court was provided with 355,265 records from 3,192 Illinois CAEs
in multiple call centers that indicated a discrepancy between
initial log-in time and scheduled start time, and so had
substantial evidentiary support to justify a finding that
plaintiffs in that case were subject to a common, statewide
policy denying overtime pay.  Two, the granting of class
certification is not a decision on the merits, so the employees'
victory in receiving class certification does not prove that
there in fact was a company-wide policy to deny overtime pay or
that such policy extended beyond any single call center.

[12] Defendant also argues that granting conditional certification
for Plaintiffs' FLSA claim is incompatible with Plaintiffs'
pending class action claims.  The Court declines to entertain
this argument at this time, however, because Plaintiffs have not
yet sought Rule 23 certification.  At such time as they do, the
Court will perform a separate analysis.

First, Defendant claims that there is no common unlawful policy because Comcast has a written policy that strictly prohibits off the clock work and specifically directs CAEs to record all time worked, including time spent prior to their shift loading computers or reviewing company emails.  Plaintiffs do not dispute that this written policy exists, but allege that despite this written policy CAEs are encouraged to work off the clock, are in fact working off the clock with their supervisor's knowledge, and are not being properly compensated for that time. Plaintiffs have provided the modest evidence necessary to suggest that Comcast's "official" policy is not being implemented at the 8110 Call Center and, as such, Comcast cannot use its written policy as a shield to prevent conditional certification at this early stage in the litigation.  See Russell v. Ill. Bell Tel. Co., 757 F.Supp. 2d 930, 935 (N.D. Ill. 2008) ("the mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides countervailing evidence of a common policy of not paying for overtime"); see also Burch v. Quest Commc'ns. Int'l, Inc., 500 F.Supp. 2d 1181, 1188 (D. Minn. 2007) ("at this early stage of litigation, the mere fact that Qwest has a written policy [to pay overtime] does not defeat Plaintiffs' motion in light of Plaintiffs' countervailing evidence of a centralized policy to not pay overtime").

Second, Defendant argues that Plaintiffs are not similarly situated to each other or to the proposed class because CAEs work in different departments and have different schedules, job duties, performance goals, supervisors, and managers.  These differences are irrelevant, however, because all of the potential class members, as limited by the Court, share the common complaint that they were encouraged to work off the clock but did not receive overtime pay.  The Court acknowledges that the CAE title is very broad, and so has prescribed that the class will be limited to CAEs who primarily work on the phones, and thus have similar job duties and are a subject to similar performance goals.  Furthermore, the Declarations provided by Plaintiffs indicate that they performed uncompensated off the clock work under the supervision of multiple supervisors and managers, suggesting that this practice is not limited to just one rogue supervisor but is a call center-wide problem.

Finally, Defendant argues that Plaintiffs' claims are inappropriate for collective action because adjudicating the dispositive issue will require individualized inquiries that will burden the Court and the parties.  Once again, in making this argument, Defendant ignores the fact that, at this stage of the litigation, the only question the Court needs to answer is whether or not employees in the proposed class are similarly situated.  Plaintiffs have satisfied their burden by

demonstrating that there are sufficient common links between the employees so that notice may be issued to the opt-in class. Though there are some differences between employees that may require individualized inquiry, a great deal of discovery will concentrate on common issues such as Comcast's time keeping policies and performance metrics. Furthermore, much of the individual inquiry will involve time entry data and log-in data that is available through Comcast's computer systems; such inquiry should not be overly burdensome because it is electronically available and so can be easily manipulated and analyzed. Moreover, courts have regularly granted conditional certification for these types of classes because some individualized analysis of class members is inevitable and cannot be avoided. Any burden on the parties due to the need to perform some individualized inquiry is outweighed by the justice gained in giving aggrieved employees an opportunity to vindicate their rights by joining together to challenge apparent illegal policies of their employer; the absence of this type of collective action would leave most employees powerless to enforce the law.

For the above reasons, the Court will grant Plaintiffs' motion in part and conditionally certify the class as limited to those employees working at the 8110 Call Center whose primary duty is to perform telephone customer service.

16

**B. Notice**

Along with their motion, Plaintiffs have included a proposed notice form to be sent to the opt-in class.  ECF No. 23-23.  Defendants argue that the proposed notice is not fair and accurate and needs to be revised.  Plaintiffs concede that the notice should be revised to indicate that Comcast denies the allegations therein.  Reply at 15.  Furthermore, the notice must be revised to reflect that the Court has granted conditional certification for a more limited class than requested by Plaintiffs.  As such, the Court directs the parties to work together to revise the notice and submit for approval a mutually agreeable notice to the Court within 14 days of the Court's Order.

**III. CONCLUSION**

For the foregoing reasons, the Court concludes that Plaintiffs' Motion for Conditional Certification and to Facilitate Notice will be granted in part.  Accordingly, the Court will order Defendant to produce to Plaintiffs' counsel, within 14 days, a computer-readable data file containing the full name and last known residential address[13] of each and every individual who was employed by Defendant from August 22, 2007,

---

[13] Plaintiffs have also requested employee phone numbers but the Court agrees with Defendant that Plaintiffs have not established a need for this information, and conclude that names and addresses should be sufficient to provide notice to the opt-in class.

to the present, at the call center located at 8110 Corporate
Drive in White Marsh, Maryland, as a Customer Account Executive,
whose primary duty is to perform telephone customer service and
who are required to log into and out of the telephone system.
Furthermore, the Court will order that the parties provide a
mutually agreeable Notice form to the Court within 14 days.  A
separate order will issue.


                                               /s/
                                         William M. Nickerson
                                         Senior United States District Judge

November 1, 2011