IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOEL FAUST, <u>et al.</u>                      *
                                              *
               v.                             *   Civil Action WMN-10-2336
                                              *
COMCAST CABLE COMMUNICATIONS                  *
MANAGEMENT, LLC                               *
                                              *
*      *      *      *      *      *      *      *      *      *      *      *      *

ISMAEL ANDREWS, <u>et al.</u>                 *
                                              *
               v.                             *   Civil Action WMN-12-2909
                                              *
COMCAST CABLE COMMUNICATIONS                  *
MANAGEMENT, LLC                               *
                                              *
*      *      *      *      *      *      *      *      *      *      *      *      *

<u>**MEMORANDUM**</u>

Before the Court in these two related actions are motions

for class certification.  <u>Faust v. Comcast Cable Commc'n Mgmt.,</u>

<u>LLC</u>, Civ. No. WMN-10-2336 (<u>Faust</u>), ECF No. 113; <u>Andrews v.</u>

<u>Comcast Cable Commc'n Mgmt., LLC</u>, Civ. No. WMN-12-2909

(<u>Andrews</u>), ECF No. 50.  Also pending are a number of related

motions, asking the Court to strike and disregard materials

submitted by the opposing party in connection with the briefing

of the class certification motions.  <u>Faust</u>, ECF No. 119

(Defendant's Motion to Strike Declaration of David E. Stevens);

<u>Andrews</u>, ECF No. 47 (Plaintiffs' Motion to Strike Defendant's

Post-Discovery Declarations Pursuant to Rule 37), ECF No. 61

(Defendant's Motion to Strike the Report of Dr. Robert Abbott

and Declaration of Catherine T. Mitchell), and ECF No. 69 (Plaintiffs' Motion to Strike Defendant's Post-Discovery Declarations Pursuant to Rule 37).  All of the motions are ripe. While the parties have requested oral argument on the class certification motions, the Court determines that the motions are sufficiently briefed and no hearing is necessary.  Local Rule 105.6.  Upon consideration of the pending motions, the Court determines that Defendant's Motion to Strike Declaration of David E. Stevens and Motion to Strike the Report of Dr. Robert Abbott and Declaration of Catherine T. Mitchell will both be granted, Plaintiffs' two Motions to Strike Defendant's Post-Discovery Declarations Pursuant to Rule 37 will be denied, and that both class certification motions will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs in these cases are Customer Account Executives (CAEs) that work or have worked during the relevant time period in two of the Maryland call centers operated by Defendant Comcast Cable Communications Management, LLC (Defendant or Comcast).  The title "Customer Account Executive" generally describes employees who share the common duty of providing service and support over the phone to current or prospective Comcast customers.  In addition to handling customer calls, CAEs are also required to review company emails in order to stay abreast of new products, services, marketing campaigns and other

updates.  Plaintiffs in <u>Faust</u> work or worked at the call center located at 8110 Corporate Drive, White Marsh, Maryland (the 8110 Call Center).  Plaintiffs in <u>Andrews</u> work or worked at the call center located across the street at 8031 Corporate Drive (the 8031 Call Center).

In these actions, Plaintiffs complain that they consistently worked uncompensated overtime in that they were required to perform various tasks, including booting up their computers, opening necessary software applications, and reviewing important company emails, before their scheduled start times so that they would be able to begin taking calls immediately upon the start of their shift.  They allege that they were not paid for this "off the clock" work.[1]  Based on this allegation, Plaintiffs in <u>Faust</u> and <u>Andrews</u> asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 <u>et seq.</u> (FLSA), as well as under the Maryland Wage and Hour Law (MWHL), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-407, and the Maryland Wage Payment and Collection Law (MWPCL), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509.  On a motion from Comcast, the Court dismissed the MWPCL claim in <u>Andrews</u>.  <u>Andrews</u>, ECF No. 34.  A

---

[1] Plaintiffs in both actions also alleged that they were required to perform work during break periods, including "completing customer orders, finishing customer service calls, logging back into the phone system, re-booting computers, and initializing software programs." <u>Faust</u>, Compl. ¶ 3; <u>Andrews</u>, Compl. ¶ 3. They appear to have abandoned that allegation.

few weeks later, the MWPCL claim in Faust was dismissed, without prejudice, by joint stipulation.  Faust, ECF No. 101.

On November 1, 2011, this Court granted the Faust Plaintiffs' Motion for Conditional Certification and to Facilitate Notice under the FLSA.[2]   Faust, ECF Nos. 43 and 44. In response to that notice, 56 current and former CAEs of the 8110 Call Center opted-in to the Faust action.  In Andrews, Plaintiffs filed a motion to amend their Complaint to withdraw their FLSA collective action, ECF No. 35, which the Court granted.  ECF No. 38.  Thus, the FLSA claims in Andrews are limited to those of the three Named Plaintiffs, Ismael Andrews, Kyle Camp, and Aubrey Foster.[3]

The two motions for class certification seek certification of Plaintiffs' claims under the MWHL.  In Faust, Plaintiffs seek certification of the following class:

> All persons employed by Comcast as Customer Account
> Executives who worked at the call center located at
> 8110 Corporate Drive, White Marsh, Maryland, from

---

[2] As originally filed, the Complaint in Faust sought to include as class members employees at all eight of the call centers that Comcast has operated in Maryland during the relevant time period.  Noting that the Named Plaintiffs in Faust were all employed at the 8110 Call Center, and concluding that Plaintiffs had failed to provide any concrete evidence that CAEs in other call centers were similarly situated, the Court granted conditional certification only as to CAEs who work or worked at the 8110 Call Center.  Andrews was filed about one year later to assert the claims of the 8031 Call Center CAEs.

[3] Aubrey Foster was added as a Named Plaintiff in the Second Amended Complaint.  ECF No. 35-1.

August 23, 2007, to June 26, 2011, and who worked in
excess of 40 hours in any workweek.

<u>Faust</u>, ECF No. 113 at 2.   In <u>Andrews</u>, Plaintiffs seek

certification of the following class:

> All persons employed by Comcast as Customer Account
> Executives who worked at the call center located at
> 8031 Corporate Drive, White Marsh, Maryland, from
> October 1, 2009, to June 26, 2011, and who worked in
> excess of 40 hours in any workweek.

<u>Andrews</u>, ECF No. 50 at 2.

Before reaching the merits of the motions for class

certification, however, the Court must first address the motions

to strike.

## II. MOTIONS TO STRIKE

### A. Defendant's Motion to Strike Declaration of David E. Stevens (Faust, ECF No. 119)

Plaintiffs' counsel has filed similar class action suits

against Comcast on behalf of CAEs working in other call centers

throughout the country.   <u>See, e.g.</u>, <u>Ginsburg v. Comcast Cable

Commc'ns Mgmt. LLC</u>, Civ. No. 11-1959, 2013 WL 1661483 (W.D.

Wash. Apr. 17, 2013); <u>Kernats v. Comcast Corp.</u>, Civ. No. 09-

3368, 2010 WL 4193219 (E.D. Ill. Oct. 20, 2010).   In these

previous actions, Plaintiffs' counsel retained experts to

analyze various log-in, timesheet, and payroll records in an

attempt to establish the CAE plaintiffs' claims.   <u>See Ginsburg</u>,

2013 WL 1661483, at *6; <u>Kernats</u>, 2010 WL 4193219, at *3.   Here,

for reasons not entirely clear, Plaintiffs did not offer the

analysis of any expert[4] but, instead, proffered a declaration of one of their attorneys, David E. Stevens, in which he purports to "summarize" the relevant data.

Defendant moves to strike the Stevens Declaration on the ground that it is, in fact, an expert opinion and, as such, cannot meet the standards annunciated in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-90 (1993).  Plaintiffs respond that the declaration is not offered as an expert report, but is "no more than an observation of the contents of certain spreadsheets produced by Defendant in discovery."  ECF No. 123 at 1.  Should the declaration be considered as simply a summary, however, Defendant contends that the declaration is inadmissible because it does not accurately reflect the content of the underlying documents.

Stevens states that he reviewed the following categories of data: badge swipe data for named and opt-in Plaintiffs; time schedule data for named and opt-in Plaintiffs; and "NT Login" data for ten of the opt-in Plaintiffs.  Stevens Decl. ¶ 4. Badge swipe data records each time employees swiped their ID badge to enter the call center building.  Steven represents that, for purposes of his analysis, he only considered the first swipe of the day, or "First Badge Swipe," which, purportedly,

_____

[4] In the Joint Status Report, Faust, ECF No. 100, the parties stated that neither Plaintiffs nor Defendant would be submitting any expert report.

would represent when the CAE arrived for work.  From the time

schedule data, Stevens pulled what he represents was the

scheduled start time for each Plaintiff's shift, or "Start

Time."  The NT login data records the time at which CAEs logged

into the Comcast computer system.  Stevens states that he

captured the first login of the day for each Plaintiff and

recorded it as the "First NT Login."  From these three sets of

data, Stevens calculated the "average amount of time between the

First Badge Swipe and the Scheduled Start Time" which he

represents was 12 minutes and 10 seconds, <u>id.</u> ¶ 10, and the

"average amount of time between First NT Login and the Scheduled

Start Time" which he represents was 16 minutes and 31 seconds.

<u>Id.</u> ¶ 16.  Plaintiffs suggest that this declaration provides the

factual basis for the argument that they were required to arrive

at work before their scheduled shifts and begin performing work

for which they were not paid.  ECF No. 123 at 6.

        Plaintiffs' protestations notwithstanding, it is clear that

the Stevens Declaration is more akin to an expert report than a

straightforward summary.  Plaintiffs state that the declaration

is an "observational <u>interpretation</u> of record evidence" and

acknowledge that, in preparing his declaration, Stevens

undertook a number of "steps and procedures" to "<u>analyze</u> the

data produced by Defendant" and "<u>evaluate</u> and arrive at the

observations made in his declaration."  ECF No. 123 at 4-5

(emphasis added).  Interpreting, analyzing, and evaluating data, however, is not synonymous with simply summarizing data, and Steven's methodology appears to be much the same as the data analysis performed by experts in the other cases brought by Plaintiffs' counsel.  See Ginsburg, 2013 WL 1661483, at *4 (analysis of retained expert statistician showing average time between login times and paid start times).

Stevens does not claim to be an expert in data analysis and Plaintiffs go out of their way to deny that Stevens has any specialized expertise.  Faust, ECF No. 123 at 2.  His "steps and procedures," however, all involve an exercise of judgment that requires such expertise.  For example, Stevens states, without explanation, that he excluded any data that showed a First NT Login that was more than 60 minutes prior to a CAE's start time.  Stevens Decl. ¶ 15.  In their opposition to the motion to strike, Plaintiffs posit that this was done because, "the farther from 0 minutes that data goes, the more likely that data is to be inaccurate."  ECF No. 123 at 6.  Stevens does not explain why 60 minutes was chosen as the cutoff for accuracy, as opposed to 30 minutes or 90 minutes or some other number, nor could he, as a non-statistician.  It appears he simply selected an arbitrary data point.

Plaintiffs suggest that Defendant cannot complain about the exclusion of this data because it "only reduces the averages

8

that Mr. Stevens ultimately summarized (to Defendant's

benefit)."  Id. (emphasis in original).  Of course, if Stevens'

arbitrarily selected cutoff point for accuracy is incorrect and

the true point is, for example, 30 minutes, Stevens has included

in his summary data that is both inaccurate and to Plaintiffs'

benefit.  Stevens also states that he removed from his analysis

any difference between First NT Login and Scheduled Start Time

that produced a negative number.  Stevens Decl. ¶ 15.  This

exclusion also inures to Plaintiffs' benefit and appears to have

been eliminated because that data undercuts the Plaintiffs'

theory that CAEs need to be logged in before they could perform

any work.  Furthermore, the need to eliminate data from either

end of the range – either negative numbers or numbers over 60

minutes - calls into question just what the averaging of

somewhat arbitrarily selected data is intended to prove.[5]

   The Stevens Declaration has even greater weaknesses as a

"summary."  Defendant points to numerous deficiencies in

addition to the somewhat arbitrary scope of the data included in

his summary.  For example, although there are 995 putative class

members, see Faust, ECF No. 120-1, Decl. of Matt Kremsky, ¶ 3,

Stevens' sample size for NT Login data is limited to data from

---

[5] In doing his analysis of the difference between First Badge
Swipe and Scheduled Start Time, Stevens similarly excluded any
negative numbers or differences over 60 minutes.  Stevens Decl.
¶ 9.

seven opt-in Plaintiffs.  Of those seven, only three have any data within the putative class period - that is from August 23, 2007, to June 26, 2011.  The majority of the data for two of the remaining three opt-in Plaintiffs also falls outside of the putative class period.  Thus, not only is his sample size remarkably small, the overwhelming majority of the very limited NT Login data Stevens analyzed falls outside of the relevant time period.  Stevens' summary of First Badge Swipe includes a similar mix of data both inside and outside of the putative class period.

Plaintiffs' primary justification for the extremely limited amount of relevant data "summarized" by Stevens is to complain that Defendant failed to preserve or to produce more of the relevant data.  As Defendant observes, however, discovery closed long ago without any objections by Plaintiffs as to the scope of the information received and Plaintiffs cannot raise those issues now for the first time.  If Plaintiffs believed that there was a preservation or discovery obligation that Defendant did not meet, they should have timely filed a motion to compel or a motion for sanctions for spoliation.  They did not.

Concluding that the Stevens Declaration qualifies as neither an admissible expert opinion nor an admissible summary of other evidence, the Court will grant Defendant's motion to strike.  The Court notes, however, that Plaintiffs

10

mischaracterize Defendant's motion to strike as one seeking to exclude the underlying data that was "summarized" by Stevens. The data is admissible, it is Stevens' characterization of that data that is not.

## B. Defendant's Motion to Strike the Report of Dr. Robert Abbott and Declaration of Catherine T. Mitchell  (Andrews, ECF No. 61)

As they did in Faust, Plaintiffs in Andrews elected not to name an expert to analyze the data produced by Defendant.  See Andrews, ECF No. 42 (stating in the Joint Status Report that "neither party will introduce expert testimony"). Notwithstanding that declared intent, Plaintiffs submitted with their Motion for Class Certification the "Expert Report of Dr. Robert Abbott."  Andrews, ECF No. 50-19.  Defendant moves to strike this report, not only because it is inconsistent with the representation that Plaintiffs would not be offering expert testimony, a representation on which Defendant relied, but for the additional reason that the report is irrelevant to this litigation.  Abbott's report was prepared for a class action suit brought in a Pennsylvania state court and analyzed some of the same type of data analyzed by Stevens, but from Defendant's call centers located, not in Maryland, but in Pennsylvania.

Plaintiffs respond that the report was not "intended to be submitted as an expert report under the Federal Rules of Evidence," but they simply "referenced the report in passing to

place the instant case in the context of an ongoing series of
cases regarding uniform practices throughout Comcast call
centers." <u>Andrews</u>, ECF No. 67 at 4.  This citation to Abbott's
report appears in a footnote in a section of the Motion for
Class Certification where Plaintiffs discuss Defendant's
decision on June 26, 2011, to begin including 10 minutes of paid
"prep time" at the start of each CAE's scheduled shift to allow
them to perform certain startup tasks.  ECF No. 50-1 at 8 n.5.
In arguing that this allocation of 10 minutes for preparatory
work "was not arbitrary," Plaintiffs cite Abbott's report for
the proposition that data analyzed in litigation in Illinois,
Washington and Pennsylvania "revealed that before instituting
the 'prep time' policy, CAE's worked an average of 12.5 minutes
of unpaid work each workday."  <u>Id.</u>  In opposing the motion to
strike, Plaintiffs go one step further and proffer that
"Plaintiffs' reference to Dr. Abbott's report demonstrates the
uniformity of Comcast's timekeeping practices throughout call
centers and the fact that Defendant had notice of such illegal
practices."  ECF No. 67 at 4-5.

   The Court will strike the report of Dr. Abbott for the
reasons argued by Defendant.  As the text of the footnote quoted
above clearly indicates, the report was submitted with the
Motion for Class Certification to establish that before June 26,
2011, which is the ending date of the proposed class period,

CAE's, including those in the 8031 Call Center, were required to work an average of 12.5 minutes of unpaid work before each shift.  Not only is this use inconsistent with Plaintiffs' declared intent to forgo the use of expert testimony, but there is nothing about the Abbott report that would support the extrapolation of conclusions concerning CAEs working in Pennsylvania call centers with those working in the 8031 Call Center.

Defendant also seeks to strike the Declaration of Catherine Mitchell, a law clerk employed in the offices of Plaintiffs' counsel.  On this issue, the motion largely parallels Defendant's motion to strike the Stevens Declaration filed in Faust.  Plaintiffs had Mitchell, as they did Stevens, do an analysis of data produced by Defendant.  Mitchell's Declaration, however, was limited to the calculation of an average difference between First Badge Swipe and the time the three "Named Plaintiffs started their shifts for timekeeping and payroll purposes."  Mitchell Decl. ¶ 4.  As they did with Stevens, Plaintiffs deny that Mitchell is offered as an expert or that she has any particular expertise.  ECF No. 67 at 5 ("Ms. Mitchell's only expertise is an ability to work with Microsoft Excel.").  As with Stevens, Plaintiffs maintain that Mitchell "merely compiled data produced by Defendant and performed no

statistical analysis nor offered any expert opinion on the meaning of the data." <u>Andrews</u>, ECF No. 67 at 2.

After declaring that Mitchell "performed no statistical analysis," however, Plaintiffs go on to note that Mitchell's declaration "details and outlines the exact steps and procedures she undertook <u>to analyze the data</u> produced by the Defendant." <u>Id.</u> at 8 (emphasis added); <u>see also</u> <u>id.</u> at 7 (describing Mitchell's declaration as an "observational interpretation") and 9 (defending Mitchell's "process of analysis").  Mitchell's Declaration certainly reveals some level of analysis.  She states that she used "randomly selected workdays" for each Plaintiff, Mitchell Decl. ¶ 7, but gives no details of her methodology and, thus, there is no means to gauge the validity of her sampling procedure.  Although she does not offer an explanation, it appears that she, like Stevens, eliminated from her analysis any data that resulted in a negative difference, i.e., where the First Badge Swipe was after the CAE's start time.  <u>See</u> ECF No. 50-26 (spreadsheet attached to Mitchell Decl.).  While Plaintiff states that Mitchell offered no opinion on the meaning of the data, she does conclude that "[t]he three named Plaintiffs were present at the call center by an average of 21 minutes and 24 seconds earlier than is reflected on their individual timesheets."  Mitchell Decl. ¶ 11.

Mitchell's acknowledged lack of expertise renders her
declaration inadmissible as an expert report.  Her declaration
also fails, however, as a meaningful summary from which any
conclusion can be drawn regarding the putative class.  Mitchell
analyzes data from only three employees.  As noted above, she
eliminated a great number of instances where Plaintiffs were
paid for time before they even arrived at the call center, i.e.,
where the First Badge Swipe was after the time that the CAEs
recorded as their start times.  This eliminated data would
significantly undercut the per day average of alleged off-the-
clock work.  Furthermore, as Defendant notes, Mitchell included
in the data she averaged a data point that indicated that, on
one occasion, Plaintiff Camp arrived at work 13 hours and 15
minutes before signing in.  Given that Mitchell analyzed data
from just over 100 days, the elimination of that obviously
errant data point alone would have significantly changed her
conclusion.

Finding that the Mitchell Declaration is neither an
admissible expert report nor a valid summary, the motion to
strike that declaration will be granted.  As with the Stevens
Declaration, however, the underlying data is admissible.

**C. Plaintiffs' Motions to Strike Defendant's Post-Discovery
Declarations Pursuant to Rule 37  (Andrews, ECF Nos. 47 and 69)**

These two motions primarily address declarations of CAEs
that Plaintiffs assert Defendant refused to identify during the
course of discovery.  The first motion, ECF No. 47,[6] relates to
three declarations that Defendant states it prepared in
anticipation of opposing a motion for conditional certification
of an FLSA collective action, a motion that Plaintiffs
ultimately elected not to file.  Accordingly, these declarations
were never submitted in connection with any motion and Defendant
argues that Plaintiffs' "motion to strike" those declarations
was either premature or moot.  The second motion, ECF No. 69,
relates to declarations of five CAEs that were submitted in
opposition to Plaintiffs' motion for class certification.[7]

---

[6] In this section, all ECF Nos. reference the docket in <u>Andrews</u>.

[7] In this second motion, Plaintiffs also purport to be seeking to
strike the declarations of two call center managers and two call
center supervisors.  Because, in filing this motion, Plaintiffs
simply adopted the argument from the first motion, and because
that first motion related solely to declarations of CAEs that
were not identified in discovery, there is no argument in the
motion itself that is particularly relevant to the declarations
of the managers and supervisors.  In their reply, Plaintiffs
devote just a single paragraph to the declarations of the
managers and supervisors.  ECF No. 76 at 7-8.  While
acknowledging that Defendant disclosed the identities of these
managers and supervisors in its interrogatory responses, <u>id.</u> at
7, Plaintiffs suggest that Defendant should have anticipated the
arguments and allegations Plaintiffs would make in their motion
for class certification and, in anticipation of that motion,
should have prepared and produced these declarations during
discovery.  Defendant's failure to do so, Plaintiffs argue,
prevented them "from testing the declarants' assertions."  <u>Id.</u>
at 8.

There is no claim, nor could there be, that these
declarations are not relevant to the issues raised in the motion
for class certification.  In their own interrogatory responses,
Plaintiffs identified "any and all current and former Comcast
CAEs" as individuals "with personal knowledge of the facts at
issue in this case."  ECF No. 48-2 at 3.  Plaintiffs, in fact,
attached declarations of three CAEs with their motion for class
certification.  While conceding relevance, Plaintiffs seek to
prevent Defendant's use of the CAEs' declarations based upon
their contention that certain of Defendant's discovery responses
gave rise to an agreement between the parties that no party
would use "CAE contact information" in this litigation.  ECF No.
60 at 3.

The discovery response on which Plaintiffs rely appears to
be Defendant's response to the following document request:

> A list, in electronic and importable form (i.e.,
> Microsoft Excel (.xls)) of all persons who were paid
> in the same or similar manner as Plaintiffs or who
> performed the same or similar job duties that
> Plaintiffs performed from August 22, 2007 to the
> present, including their name, address, telephone
> number, dates of employment, location of employment
> (including name of consumer or small business center,
> city and state), employee number, and their social
> security number.

---

Plaintiffs' argument is wholly without merit.  These
individuals were clearly identified in discovery and Plaintiffs
could have deposed them if they chose.  Plaintiffs cite no
authority for this purported obligation to produce anticipatory
declarations.

ECF No. 47-5 at 5.   Comcast's response to that Request was as
follows:

> Defendant objects to Request No. 2 on the grounds that
> the phrase "persons who were paid in the same or
> similar manner as Plaintiffs or who performed the same
> or similar job duties that Plaintiffs performed,"
> renders the request vague and ambiguous, overbroad,
> unduly burdensome, and not reasonably calculated to
> lead to the discovery of admissible evidence.
> Specifically, Plaintiffs have not demonstrated, at
> this stage of the litigation, that they are entitled
> to class-wide discovery, let alone which positions
> would be included in that class.   Defendant further
> objects to this Request on the ground that it goes
> beyond the requirements of Fed. R. Civ. P.
> 34(b)(2)(E), which requires only that Defendant
> produce documents "as they are kept in the usual
> course of business."   Defendant also objects to this
> Request on the grounds that producing such information
> would violate the privacy rights of third parties not
> parties to this action.

Id. at 5-6.   Plaintiffs did not move to compel any further

response during the discovery period.

As this response makes clear, Defendant's position was not

as Plaintiffs have characterize it, i.e., as a "stated

insistence that **no party** use the 'irrelevant' CAE contact

information" or that any use of this information would "'violate

[CAE's] privacy rights'" and thus was "off-limits in this

litigation."   ECF No. 60 at 3 (emphasis in original).   In

objecting to this particular document request, Defendant simply

observed, correctly, that a request relating to all "persons who

were paid in the same or similar manner as Plaintiffs or who

performed the same or similar job duties that Plaintiffs

performed," was vague and ambiguous, overbroad, and unduly
burdensome.  Defendant also noted, again correctly, that this
request, which, as propounded, included a request for the social
security numbers of all of these individuals, "would violate the
privacy rights of third parties not parties to this action."
Instead of attempting to respond to these objections or to
narrow the request, Plaintiffs did nothing.

The Court also notes that Plaintiffs' current contention
that they were somehow prejudiced by the lack of contact
information for CAEs or by Defendant's failure to produce these
declarations in discovery is somewhat spurious.  Plaintiffs
suggest that, had the declarations been timely produced,
"Plaintiffs would have deposed these witnesses and justifiably
moved to compel their NT-log in and badge swipe data."  ECF No.
53 at 2.  Notwithstanding that suggestion, Plaintiffs in Faust
were provided a class list of almost 1000 CAEs and yet did not
depose a single CAE or move to compel any data related to those
CAEs.

The Court will deny both of these motions to strike
declarations.

## III. MOTIONS FOR CLASS CERTIFICATION

## A. Legal Standard for Rule 23 Class Certification

Rule 23(a) provides that "[o]ne or more members of a class
may sue . . . as representative parties on behalf of all members

only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).   The Fourth Circuit has observed that "the final three requirements of Rule 23(a) 'tend to merge,' with commonality and typicality 'serving as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Brown v. Nucor Corp., 576 F.3d 149, 152 (4th Cir. 2009) (citation omitted).  Rule 23(a)(2)'s requirement that proposed classes bear "commonality," mandates that Plaintiffs show "that 'there are questions of law or fact common to the class.' Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550-51 (2011) (quoting Fed. R. Civ. P. 23(a)(2)).

Commonality requires that class members "suffered the same injury." Id. at 2551 (quoting Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982)).  "Their claims must depend upon a common contention . . . of such a nature that it is capable of class-wide resolution — which means that

20

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

In addition to complying with Rule 23(a), a proposed class must satisfy one of the requirements set forth in Rule 23(b). Rule 23(b) provides that a class action may be maintained if Rule 23(a) is satisfied and if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation
concerning the controversy already begun by or
against class members;

(C) the desirability or undesirability of
concentrating the litigation of the claims in the
particular forum; and

(D) the likely difficulties in managing a class
action.

Fed. R. Civ. P. 23(b)(1)-(3).  In these actions, Plaintiffs seek

Certification under Rule 23(b)(3), arguing that questions of law

or fact common to class members predominate over any questions

affecting only individual members and that class treatment is

superior to any other method of adjudicating Plaintiffs' claims.

"Rule 23 does not set forth a mere pleading standard.  A

party seeking class certification must affirmatively demonstrate

his compliance with the Rule — that is, he must be prepared to

prove that there are in fact sufficiently numerous parties,

common questions of law or fact, etc." Dukes, 131 S.Ct. at

2551.  When considering a motion for class certification, the

Fourth Circuit has instructed that a trial court must engage in

a "rigorous analysis" of Rule 23's prerequisites for class

certification.  Ealy v. Pinkerton Gov't Servs., Inc., 514 F.

App'x 299, 305-06 (4th Cir. 2013).

## B. Class Certification in Faust

Comcast has identified some significant difficulties in

Plaintiffs' ability to meet even the preliminary requirements of

Rule 23(a).  On the issue of numerosity, it is true that there are almost one thousand putative class members that were employed as CAEs at the 8110 Call Center during the proposed class period.  While this many potential class members would normally support a finding that the class is "so numerous that joinder of all members is impracticable," in this instance, one could argue that the joinder of all those who desire to pursue a claim for working "off-the-clock" is not only practical, but has already occurred.  In response to the conditional certification of an FLSA action and notice to the putative class, 56 CAEs joined this action.[8]  See Daigle v. Shell Oil Co., 133 F.R.D. 600, 603 (D. Colo. 1990) (finding joinder not impractical where, of a potential class of over 4000, the 78 individuals who appeared interested in joining the suit had already joined).

As to typicality,[9] Defendant notes several unique aspects of the Named Plaintiffs' employment.  For much of the class period, Plaintiff Feldman worked a part time schedule and, thus, would

---

[8] Some of those opt-in Plaintiffs subsequently withdrew from this action.  See, e.g., ECF No. 92 (Stipulation of Dismissal as to Plaintiffs McGlaughlin and Thomas).  Summary judgment was granted on the claims of other opt-in Plaintiffs upon proof that they did not work more than 40 hours for any week within the class period.  See Faust, ECF No. 85 (Order granting summary judgment as to Plaintiffs Saint Pierre and Gallo).

[9] The Rule 23(a) requirement of "commonality" will be discussed below in conjunction with the "predominance" requirement of Rule 23(b)(3).

not have been entitled to any overtime compensation.  See ECF
No. 121-33,[10] Decl. of Samantha Callahan, ¶ 12 (noting that
Feldman worked a 30 hour week from March 9, 2008, through the
date of his retirement, April 2, 2010).  Plaintiff Faust worked
for much of his employment in the Advanced Services Center team.
ECF No. 121-15, Decl. of Sundina Jones, ¶ 3.  In that position,
Faust would not have taken inbound telephone calls, but worked
to resolve problems encountered by other CAEs.  Id.  Thus,
Plaintiffs whole theory of CAEs needing to log in and be ready
to receive telephone calls as soon as their shift begins would
not be applicable to Faust in the same way as other CAEs.

     In their motion, Plaintiffs provide no real discussion of
the typicality requirement beyond the unsupported declaration
that "Plaintiffs' claims and those of the CAE class members are
identical."  ECF No. 113-1 at 27.  In their reply brief,
Plaintiffs offer no response to Defendant's specific challenges
to that conclusion.  Significantly, in their briefing of the
motion for conditional certification, Plaintiffs acknowledged
that "any CAE who did not perform telephone customer service
would not be similarly situated."  ECF No. 32 at 5 n.6.

     As to the adequacy of the Named Plaintiffs to represent the
class, Defendant notes that, in the initial complaint,

---

[10] Except where otherwise noted, all ECF Nos. cited in this
section reference the docket in Faust.

Plaintiffs alleged, not only were CAEs compelled to do uncompensated pre-shift work, but that some CAEs were also required to work during breaks and after the conclusion of their shifts without compensation.  Some of the opt-in Plaintiffs have alleged that they worked off-the-clock during unpaid lunch breaks and were not paid for the post-shift work that they performed.  See ECF No. 121-23, Dep. of Chanelle Pair at 29, 50; ECF No. 121-22, Dep. of Joseph Stewart at 64; ECF No. 121-42, Dep. of Ondrea McClain at 35.  Without explanation, the Named Plaintiffs appear to have simply abandoned these claims of potential class members.  Were this class to be certified and proceed to final judgment, all class members could be barred by res judicata from pursuing these now abandoned claims that could have been asserted in this action, but were not.  Plaintiffs' unexplained decision to abandon the claims of some potential class members calls into question the adequacy of the Named Plaintiffs' representation.  See Clark v. Experian Information Solutions, Inc., Civ. Nos. 00-1217, 00-1218, 00-1219, 2001 WL 1946329 (D.S.C. Feb. 13, 2004) (finding potential conflict of interest that would defeat adequate representation where named plaintiffs' conduct placed absent class members at risk of having other claims barred by res judicata).[11]

---

[11] Again, in their reply brief, Plaintiffs do not offer any response to this argument.

While Defendant does not challenge the experience and qualification of Plaintiffs' counsel, the Court notes a somewhat problematic effort on the part of counsel in pursuing this action.  As noted above, Plaintiffs' counsel now complains about inadequate preservation and production of evidence but failed to timely pursue that evidence during discovery.  Furthermore, as also discussed above, Plaintiffs' counsel's decision to forgo the retention of an expert and, instead, to simply attempt to offer a declaration of one of the attorneys, is somewhat puzzling.  In other similar cases brought by the same counsel, they concluded that an expert was necessary to support their motion for class certification.

Were the Court to assume, without deciding, that, notwithstanding these concerns, Plaintiffs could meet their burden under Rule 23(a), the Court would, nonetheless, deny class certification based upon Plaintiffs' inability to satisfy the requirements of Rule 23(b)(3), specifically, the "predominance" requirement.  "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).  While there may be some questions of

fact and law that are common among all class members,[12] the Court finds that the critical issues in this litigation are not subject to common proof.

To establish claims under the MWHL, plaintiffs must show that (1) they worked overtime hours without compensation, and that (2) the employer knew or should have known that plaintiffs worked overtime but failed to compensate them for it. Drubetskoy v. Wells Fargo Bank, Civ. No. CCB-13-2196, 2013 WL 6839508, at *6 (D. Md. Dec. 20, 2013). Claims for overtime wages are also subject to various defenses, including whether the uncompensated time was de minimis. See Myers v. Baltimore Co., 50 F. App'x 583, 588 n.6 (4th Cir. 2002) (noting that, under the FLSA, most courts, including the Fourth Circuit, treat uncompensated time under 10 minutes as de minimis); Gillings v. Time Warner Cable LLC, Civ. No. 10-5565, 2012 WL 1656937 (C.D. Cal. Mar. 26, 2012) (holding that, where at most 6 minutes were spent loading programs on computer, that time could be considered de minimis). Thus, there are at least four questions

---

[12] For example, all CAEs are subject to the official policy forbidding off-the-clock work, although Plaintiffs claim that policy is routinely violated. On the other hand, all CAEs are also subject to an official policy that Comcast computers are not to be used for personal business, although Defendant claims that this policy is often violated. All CAEs are subject to common time keeping requirements and, as the Ginsburg court recognized, all CAEs, or at least those that handle telephone calls from customers, experience pressure to maximize the time spent on the telephone. 2013 WL 1661483, at *4.

that must be answered to determine if any given CAE can
establish Comcast's liability under the MWHL: (1) did the CAE
work overtime?; (2) was the CAE compensated for that overtime?;
(3) if the CAE was not compensated, did Comcast know, or should
it have known, that the CAE worked that overtime?; and, (4) was
the amount of overtime greater than what would be considered de
minimis?

It is undisputed that Comcast's official policy forbids
off-the-clock work and instructs CAEs to record all of the time
that they work.  ECF No. 121-3, Comcast Employee Handbook at 48
("employees must . . . never work 'off-the-clock'") and 107
("Employees are prohibited from working off-the-clock.  This
means that it is the employee's responsibility to record
accurately work hours . . . even if it is outside the employee's
scheduled shift time.").  Thus, to establish their claim under
the MWHL, Plaintiffs must show that, despite that policy,
Comcast had some unofficial policy or practice of permitting
CAEs to act in contravention of that official policy.  In order
to support the certification of a class action, the existence,
vel non, of this unofficial policy must be capable of being
demonstrated on a class-wide basis.  The Court finds that it
cannot.

If there was some unwritten policy that required or
permitted off-the-clock work, it, most likely, would have been

28

communicated to the CAEs in some way by their individual supervisors.  During the relevant time period, however, Comcast employed more than eighty different supervisors at the 8110 Call Center.  ECF No. 121-2, Decl. of Matt Kremsky ¶ 4.  In addition, because of rescheduling and personnel changes, a CAE could be reassigned to a different supervisor every few months.  ECF No. 121-27, Decl. of Brian Becker ¶ 4.

No CAE testified that he or she was told by a supervisor to work off-the-clock and not record that time.  Several, in fact, specifically denied that they were ever told to act inconsistent with the written policy.  When asked if he was ever instructed not to follow the written policies or if he was aware of inconsistencies between the written policies and the instructions of his supervisors, Opt-in Plaintiff Linwood Foster answered "no."  ECF No. 121-34, Dep. of Linwood Foster at 30. Other opt-in Plaintiffs testified similarly.  See, e.g., ECF No. 121-35, Dep. of Kevin McNeal at 24 (stating that he could not recall any inconsistencies between the written policies and what he was instructed by his supervisors); ECF No. 121-24, Dep. of Christopher Huppman at 34 (same).  In addition, Defendant submitted declarations of numerous CAEs in which they state that supervisors stressed that CAEs should not perform work prior to

the start of their shifts.  See, e.g., ECF No. 121-20, Decl. of

Lawrence Koehler ¶ 12.[13]

While Plaintiffs provide no class-wide proof of supervisors

instructing CAEs to work off-the-clock, Plaintiffs proffer that

CAEs may have somehow inferred from what they were told that

they were required to come in early to prepare for their shift

and not record that time.  For example, while Named Plaintiff

Faust did not testify that he was instructed to work off-the-

clock, he testified that it was somehow "implied" that he had to

do so.  ECF No. 121-31, Faust Dep. at 127.  If there is

difficulty in establishing class-wide proof as to what CAEs were

actually told by more than 80 different supervisors, there is

another entire layer of variation in what individual CAEs may

have inferred, or interpreted, or considered to be implied from

what they were told by their supervisors.

Plaintiffs have also failed to identify any source of

class-wide proof that, when CAEs did do pre-shift work, either

---

[13] Plaintiffs express skepticism regarding what they deem "happy
camper" declarations from current employees, implying that
current employees might be less than candid for fear of
retaliation from their employer.  ECF No. 127 at 2.  There is no
evidence of any such intimidation.  Furthermore, as the court in
Ginsburg noted in response to the same expressed concern of
Plaintiffs' counsel, plaintiffs also have "an incentive to shape
their testimony to the attorneys' need."  2013 WL 1661483 at *6
n.4.  Here, while the declarations offered by Defendant
reinforce the conclusion that this action cannot go forward as a
class action, the deposition testimony of the opt-in Plaintiffs
alone would support the same conclusion.

on the instruction of their supervisor or on their own
initiative, that they were not to be compensated for that work.
Opt-in Plaintiff Ondrea McClain testified that she sometimes
started work before her scheduled shift but denied that her
supervisor ever told her not to record that time.  ECF No. 121-
42, Dep. of Ondrea McClain at 43.  She also acknowledged, when
confronted with documentation of the same, that her supervisor
approved the payment for that pre-shift work.  Id. at 46.  Opt-
in Plaintiff Gary Fauntleroy testified that he was told by
Comcast Manager, Brian Becker, that he was to come in 10 to 15
minutes before his shift to get his computer set up.  ECF No.
121-39, Dep. of Gary Fauntleroy at 26.  While initially
testifying that Becker "never said anything about time
recording," id., he later acknowledged receipt of an email from
Becker in which it was clearly stated that time worked prior to
a shift should be recorded.  Id. at 41.  Fauntleroy further
stated that he complied with that instruction and recorded his
pre-shift time.  Id.

    The issue of Defendant's knowledge of off-the-clock work is
also not subject to class-wide proof.  Defendant notes that some
potential class members are "virtual CAEs," which means that
they work from home and their supervisors would have no direct
means of knowing that they are working off-the-clock.  One such
virtual CAE, opt-in Plaintiff Joseph Stewart, testified that he

did not tell anyone that he was working prior to the beginning of his shift and that he was not aware of any way that his supervisor could have been aware that he was doing so.   ECF No. 121-22, Dep. of Joseph Stewart at 32.   CAEs who worked in the call center similarly testified that they never informed their supervisors that they were working off-the-clock.   See ECF No. 121-43, Dep. of Ryan Andrzejewski at 33; ECF No. 121-31, Dep. of Marshall Feldman at 30.

The extent of any work done off-the-clock and whether it exceeds a de minimis level is also not subject to resolution on a class-wide basis.   The computer programs used by CAEs and, thus, the amount of time needed to initiate those programs varied depending upon the department to which that CAE might be assigned.   In addition, some CAEs simply locked their computers between shifts instead of shutting them down and re-booting, which also impacted the time needed to be "up and running."   As a result, the startup time could vary from a few seconds to several minutes.   See ECF No. 121-14, Dep. of Michael Krupey at 71 (testifying that the low end of time to get the computer up and running was "less than ten seconds," the high end could be several minutes).

In response to these clear barriers to class-wide proof of their claims, Plaintiffs proffer a simplistic solution that they posit would permit them to establish liability.   Plaintiffs

suggest: "Common questions do predominate, and they are
questions on which liability turns: Specifically, those
questions are whether the NT Log-In time is the "first principal
activity" of the workday, and whether Defendant permitted CAEs
to work that time."  ECF No. 127 at 10.  This 'first principal
activity' theory is the crux of Plaintiffs' argument for
certification.

The evidence, however, reveals that CAEs engaged in a
variety of activities between the time they logged into their
computers and the time that they begin taking customer calls or
engaged in other tasks related to their actual work functions.
Although Defendant's official policy discourages CAEs from using
Comcast computers for personal use,[14] several CAEs stated that
they would log onto their computers and check personal emails or
surf the internet before the start of their shift.  See, e.g.,
ECF No. 121-29, Decl. of Lawrence Koehler ¶ 5 (stating he would
arrive at the call center 5 or 10 minutes before his shift, log
onto his computer, get coffee and do "personal stuff" on his
computer, like checking personal email).  Other CAEs described
other activities in which they would engage after arriving at
the center and booting up their computers.  For example, CAE

---

[14] See Andrews, ECF No. 47-6, Dep. of Samantha Callahan at 25-26
(stating that, while she was not familiar with the specific
policy prohibiting the use of Comcast computers for personal
reasons, she believed that CAEs were not permitted to do so).

Roland Adams stated that he would routinely arrive at the call
center about 30 minutes before his shift, would boot up his
computer and talk with co-workers, hang out in the workroom or
use his computer to check the news or personal email.  ECF No.
121-26, Decl. of Roland Adams ¶ 4.

Furthermore, as discussed above, the data that was
submitted with the Declaration of David Steven indicates that in
some instances, the First NT-Login was more than 60 minutes
before the start of the CAEs scheduled shift.  Even Plaintiffs
concede that this was not an accurate indication of time worked
off-the-clock.  Perhaps as significant are the instances in
which CAEs recorded that they had begun the shift before logging
into their computers.  (These are the negative differences
between First NT Login and Start Times eliminated by Mr. Stevens
in his analysis.)  First NT-Login is clearly not, in many
instances, an accurate marker for the beginning of the workday.

Despite these acknowledged difficulties in using First NT
Logins as the point at which compensable time is to begin,
Plaintiffs opine that "it is simply wrong as a matter of law
that an activity which is 'integral and indispensable' to a
'principal activity' can, in some other context, be non-
compensable.  There is, then, no need to spin all sorts of
hypotheticals about activities that CAEs were engaged in once
they logged-in to the Comcast computer system: as Plaintiffs

will demonstrate on the merits, the very process of logging-in, as an event integral and indispensable to their work as Comcast CAEs, universally starts their workday." ECF No. 127 at 12 (emphasis added). In support of this theory, Plaintiffs rely on regulation issued under the FLSA and a decision applying those regulations. ECF No. 127 (quoting 29 C.F.R. § 790.6(a), 29 C.F.R. § 785.18, and IBP, Inc. v. Alvarez, 546 U.S. 21 (2005)). Those authorities stand for the general proposition that a compensable "continuous workday" runs from the "first principal activity" of the day through the "last principal activity" of the day.

For Plaintiffs to take that general proposition, however, and then conclude that a CAE could arrive 15 or 20 minutes before their scheduled shift, spend 30 seconds booting up their computer, and by doing so, transform the next 15 or 20 minutes of personal business or activity into compensable time is, somewhat farfetched. While it is difficult to find authority refuting such an seriously flawed argument, cases decided in the context of claims for commuting time under the "continuous workday" theory provide some guidance. In Kuebel v. Black & Decker Inc., 643 F.3d 352 (2d Cir. 2011), the plaintiff argued that, because he performed some administrative tasks at home before commuting to work, his commute time should be compensable under the FLSA. The court held that, "even if those tasks do

qualify as integral and indispensable (and, thus, principal), they do not affect the compensability of [the plaintiff's] drive time." 643 F.3d at 360; see also Singh v. City of New York, 524 F.3d 361, 371 n.8 (2d Cir. 2008) (holding that "a de minimis principal activity does not trigger the continuous workday rule").

Plaintiffs offered this same predominance argument in Ginsburg and that argument was soundly and properly rejected.

> To the extent that Plaintiffs believe that what event commences the workday is a common legal question, the court disagrees.  To be sure, there are legal standards that govern when a workday commences and obligate employers to compensate their employees for the time between the beginning and end of the workday. See, e.g., [Washington Administrative Code] § 296-126-002(8) (defining "Hours worked" as "all hours during which the employee is authorized or required by the employer to be on duty ..."); Alvarez v. IDP, Inc., 339 F.3d 894, 902-03 (9th Cir. 2003) (defining "work" within meaning of Fair Labor Standards Act ("FLSA")). . . .  But these legal definitions guide factual inquiries.  In determining whether work prior to a shift is compensable, courts considering FLSA claims consider not only whether the work is "necessary to the principal work performed and done for the benefit of the employer." Alvarez, 339 F.3d at 903 (emphasis added).  Although it is likely that logging into Comcast's computer network is necessary to a CAE's principal work, an employee who logs on 15 minutes early to accomplish personal business or as a matter of convenience is not doing so for the benefit of the employer.  Under Washington law, that same employee is not "authorized or required" by Comcast to be on duty. Again, Plaintiffs suggest no classwide means of determining when each class member's daily work began.

Ginsburg, 2013 WL 1661483, at *6-7.

Finding that the questions of law or fact common to class members do not predominate over the questions affecting only individual members, the Court will deny Plaintiffs' motion for class certification in Faust.

## C. Class Certification in Andrews

Plaintiffs assert that the basis for their claims in Andrews and in Faust is "exactly the same." Andrews, ECF No. 50-1 at 1. Their arguments for class certification are also, predictably, almost exactly the same. On the issue of predominance, Plaintiffs, in their motion and reply, simply pasted, word for word, the text from their Faust motion and reply. Compare Faust, ECF No. 113-1 at 29-34 and ECF No. 127 at 9-12 with Andrews, ECF No. 50-1 at 25-30 and ECF No. 71 at 9-13. Because the Court has rejected those arguments, the motion for class certification in Andrews will be denied as well, for the same reasons.

## IV. CONCLUSION

With the denial of the motions for class certification, these cases will proceed on the claims of the individual Plaintiffs. Counsel shall submit a joint report within 14 days proposing the manner in which these cases shall go forward. A separate order consistent with this memorandum will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge


July 15, 2014